FILED

2010 Feb-25  AM 09:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

CARL MALIN,

      PLAINTIFF,

                                 CASE NO. CV 09-J-0361-NE

vs.

CULLMAN REGIONAL
MEDICAL CENTER, LIBERTY
LIFE ASSURANCE COMPANY OF
BOSTON,

      DEFENDANTS.

## <u>MEMORANDUM OPINION</u>

Pending before the Court are plaintiff Carl Malin's motion for judgment as a matter of law or in the alternative, judgment on the administrative record (doc. 18) and memorandum of law in support thereof (doc. 18-2), as well as defendant Liberty Life Assurance Company of Boston's motion for judgment on the administrative record and brief in support thereof (doc. 24).  Plaintiff has also filed a reply brief (doc. 25).

### Statement of Facts

Plaintiff Carl Malin filed this suit under the Employee Retirement Income Security Act (ERISA) seeking coverage on a group long-term disability (LTD) policy with Liberty Life Assurance Company of Boston (Liberty). Malin worked

at Cullman Regional Medical Center as an EMS director and was covered for LTD

benefits by a group policy issued to Cullman Regional Medical Center by Liberty.

(AR 1-75).

The Liberty policy defines "disabled" and "disability" as follows:

1.    For persons other than pilots, co-pilots, and crewmembers of
      an aircraft:

i.     if the Covered Person is eligible for the 24 Month Own
       Occupation benefit, "Disability" or "Disabled" means that
       during the Elimination Period and the next 24 months of
       Disability the Covered Person, as a result of Injury or
       Sickness, is unable to perform the Material and Substantial
       Duties of his Own Occupation; and

ii.    thereafter, the Covered Person is unable to perform, with
       reasonable continuity, the Material and Substantial Duties of
       Any Occupation.

(AR 6). Under the policy, "any occupation" means one that the insured "is or

becomes reasonably fitted by training, education, experience, age, physical and

mental capacity." (AR 5).

The Liberty policy requires the insured to provide "Proof" in order to

receive benefits. (AR 14). "Proof" is defined as:

the evidence in support of a claim for benefits and includes, but is not
limited to, the following:

1. a claim form completed and signed (or otherwise formally
   submitted) by the Covered Person claiming benefits;

2

2. an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending physician; and

3. the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.

Proof must be submitted in a form or format satisfactory to Liberty.

(AR 8).

On July 6, 2006, Malin filed a claim with Liberty seeking LTD benefits because of chest pains, arthritis, loss of use of right hand, and degeneration and a bulging disc in his neck. (AR 517-18). On September 5, 2006, Liberty found that Malin was unable to perform the material and substantial duties of his own occupation and awarded him disability benefits. (AR 438). Liberty also notified Malin that after 24 months, his disability status would be reevaluated relative to his inability to perform any occupation. (AR 438).

In September 2007, Liberty requested information to evaluate Malin's continued eligibility for disability benefits. (AR 407). Malin reported on an activities questionnaire provided by Liberty that he was able to work on his house, wash his car, carry groceries into the house, and clean the bathroom. (AR 404-405) Malin further reported leaving the house approximately three times a week and going outside every day. (AR 404). Malin also reported that he neither worked

for wages nor performed any volunteer work. (AR 405).

As part of its evaluation, Liberty requested that each of Malin's physicians complete a restrictions form. (AR 389, 392, 394, 396, 397). The responding physicians submitted forms that reported as follows:

> November 27, 2007: Dr. Dueland (Malin's orthopedist) stated "no restrictions – may <u>constantly</u> work" and indicated that Malin could perform on a full-time basis at a heavy level. (AR 334).

> December 17, 2007: Dr. Gober reported that Malin could work at a sedentary level and indicated restrictions of occasional lifting or carrying up to 10 pounds of weight for up to 20 minutes per hour, with "many rest periods interspersed." (AR 381-382).

> February 28, 2008: Dr. Blackburn (Malin's rheumatologist) reported that Malin could work at a sedentary level. (AR 327).

In addition to receiving physician reports, Liberty retained Cascade Disability Mgmt., Inc. to perform an Occupational Analysis Report on Malin's occupation. (AR 324-326). The report concluded that "the labor market research throughout the national economy indicated a heavy physical demand classification." (AR 326). As such, Liberty concluded that Malin was unable to perform his own occupation.

As it began evaluating whether Malin would qualify for benefits under the "any occupation" requirement, Liberty requested updated restrictions forms from Malin's physician, David Dueland. (AR 304). On May 16, 2008, Dr. Dueland

4

again submitted a restrictions form that indicated Malin's capacity for "heavy" work, noting that he had not seen Malin since he submitted the last form, which also indicated heavy capacity. (AR 302).

On May 22, 2008, consulting physician Dr. Robert Millstein submitted an evaluation of Malin's file as to the "any occupation" requirement for continued disability benefits. (AR 292-300). Dr. Millstein examined each medical record that had been submitted to Liberty and assessed potential impairment for every medical issue for which Malin had sought treatment. (AR 293). Dr. Millstein also noted that "[t]hree websites currently list Mr. Malin as the pastor for the Calvary Apostolic Church in Alabama" and opined that "claimant's physical activity may be greater than that which he reports," especially given the inconsistencies between Malin's activities questionnaire and the activity he reported during patient visits. (AR 298-299).

In his evaluation, Dr. Millstein noted that "[a]lthough the claimant's orthopedist [Dr. Dueland] has opined that the claimant has heavy physical capacity, this is not supported by the available records." (AR 293). Dr. Millstein also noted that Dr. Gober's list of restrictions was "not supported by the record including the claimant's self-reported activity which appears to include putting in fences, riding horses, and other activities." (AR 294; AR 333; AR 351). Dr.

Millstein concluded that "the record supports impairment which would preclude the claimant from performing full-time occupations above those requiring sedentary capacity." (AR 293).

On June 5, 2008, Liberty notified Malin that he was not eligible for benefits beyond 24 months because he was not unable to perform the requirements of "any occupation" as outlined in the policy. (AR 284-287).

On September 23, 2008, Malin sent Liberty a letter of appeal that included:

- a letter dated June 23, 2008, from Dr. Gober, stating that Malin is permanently disabled (AR 262)

- a letter dated June 16, 2008, from Dr. Dueland, referencing Dr. Bostick's opinion that Malin's chest pains are a result of fibromyalgia, stating that Malin does not have difficulty standing or climbing onto the examining table, and concluding that Malin is able to perform simple sedentary deskwork (AR 263-264).

- office notes from Dr. Blackburn for the period between July 2006 and June 2008, concluding that Malin's symptoms of chest pain are due primarily to fibromyalgia (AR 265-277).

- a letter from Carl Malin explaining that he turned over some of his duties as pastor of Calvary Apostolic Church to an assistant pastor because of conflicts with his medical appointments and stating that another minister assists Malin in Sunday and Wednesday night ministering (AR 281).

Liberty obtained an independent medical review from a Board Certified Orthopedic Surgeon and a Board Certified Internal Medicine specialist. Both

doctors were instructed to use both discussions with treating physicians and evaluations of medical records to determine Malin's level of disability. (AR 253).

Dr. Michael Weiss, a Board Certified Orthopedic specialist at the University of Pittsburgh Medical Center, conducted the orthopedic review. (AR 245-250). After evaluating office notes and medical records from Malin's treating physicians and discussing Malin's impairments with Dr. Dueland, Dr. Weiss determined that Malin was capable of performing full-time sedentary work with restrictions and limitations on lifting, carrying, standing, and walking. (AR 249). On November 5, 2008, Dr. Weiss sent a follow-up letter to Dr. Dueland, requesting confirmation on the details of their conversation.[1] (AR 245).

Dr. Stephanie Kao, a Board Certified Internal Medicine specialist, conducted the internal medicine review. (AR 234-241). After evaluating office notes and medical records from Malin's treating physicians, Dr. Kao concluded that the medical record did not support impairment associated with coronary artery disease or any of Malin's secondary diagnoses. (AR 240). Dr. Kao also discussed Malin's diagnoses with Dr. Blackburn, who considered the treatment for Malin's fibromyalgia to be reasonably successful and did not identify any specific

---

[1]Plaintiff confirms that the follow-up letter is an accurate reflection of the peer-to-peer consultation between Dr. Dueland and Dr. Weiss (doc. 18-2, p. 11).

impairment associated with fibromyalgia. (AR 240). Based on this discussion and the available medical information, Dr. Kao concluded that the medical record did not support impairment associated with fibromyalgia. (AR 240).

Liberty then conducted a Transferable Skills Analysis based on the peer reviews by Dr. Weiss and Dr. Kao, as well as Malin's education and work history. (AR 230-232). After outlining Malin's transferable skills, the Transferable Skills Analysis identified alternative occupations of dispatch supervisor, dispatcher, and admitting clerk. (AR 232). The Transferable Skills Analysis noted that it had considered medical administration positions based on Malin's experience but had rejected them because Malin lacked both the necessary education and the ability to perform light duty work. (AR 232).

On December 17, 2008, Liberty notified Malin of its decision to uphold denial of LTD benefits. (AR 202). On December 22, 2008, Liberty received a note from Dr. Dueland stating that Malin was fully disabled and incapable of work. (AR 198). Dr. Dueland further stated that "[p]rolonged sitting (8 hour shifts) is not feasible" with Malin's disabilities. (AR 198).

<u>STANDARD OF REVIEW</u>

The policy documents grant Liberty "the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility thereunder."

(AR 32). Where an administrator of an ERISA-governed plan exercises discretion, deferential arbitrary and capricious review is appropriate. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111-113 (1989). The Eleventh Circuit has equated the deferential arbitrary and capricious standard with the abuse of discretion standard. *See Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1139 (11th Cir. 1989). Under this standard, "the plan administrator's decision to deny benefits must be upheld as long as there is a 'reasonable basis' for the decision." *Oliver v. Coca Cola Co.*, 497 F.3d 1181, 1195 (11th Cir. 2007), *vacated in part*, 506 F.3d 1316, *and adhered to in part on rehearing*, 546 F.3d 1353 (11th Cir. 2008).

The Eleventh Circuit previously applied a six-step analysis in reviewing a plan administrator's decision to deny benefits:

> (1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

> (2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

> (3) If the administrator's decision is "de novo wrong" and he *was* vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

> (4) If no reasonable grounds exist, then end the inquiry and reverse

the administrator's decision; if reasonable grounds do exist, then
determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict of interest, then apply heightened arbitrary
and capricious review to the decision to affirm or deny it.

*Doyle v. Liberty Life Assur. Co. of Boston,* 542 F.3d 1352, 1356 (11th Cir. 2008)

(citing *Williams v. BellSouth Telecomms., Inc.*, 373 F.3d 1132, 1138 (11th Cir.

2004).

The Supreme Court's decision in *Metropolitan Life Ins. Co. v. Glenn*, 128

S.Ct. 2343 (2008), implicitly overruled the earlier standard's requirement at the

sixth step that district courts apply heightened arbitrary and capricious review to

review of a decision by a conflicted administrator. In *Doyle*, the Eleventh Circuit

held that "the existence of a conflict of interest should merely be a factor for the

district court to take into account when determining whether an administrator's

decision was arbitrary and capricious." 542 F.3d at 1360. Because Liberty is both

administrator and insurer under the plan, such a conflict of interest exists here.

*Glenn*, 128 S.Ct. at 2348.

## LEGAL ANALYSIS

A.    Liberty's decision to deny benefits was not de novo wrong. (Step One)

The plaintiff argues that the defendant's decision to deny LTD benefits was

wrong because there is no substantial evidence to show that alternate reasonable

occupations exist. The plaintiff points to the note received from Dr. Dueland on

December 22, 2008, as evidence that defendant should have included in its

evaluation of the denial of benefits, which was completed on December 17, 2008.[2]

    In considering whether a decision to deny benefits was wrong, the court is

limited to "the record that was before [defendant] when it made its decision."

*Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241 (11th Cir. 2008). Based

on the record before the defendant when it denied the plaintiff's LTD benefits, the

decision was not wrong. Only Dr. Gober's letter on June 23, 2008, indicates

complete and permanent disability, with no explanation or medical documentation

to support this conclusion. (AR 262). The record, which does not include

treatment notes or medical records from Dr. Gober (AR 292), does not support this

subjective assessment.

    In fact, the objective evidence that the reviewing physicians evaluated

includes evidence of the plaintiff working with fence posts in May 2007 (AR 333)

---

[2]Plaintiff also points to defendant's failure to provide the reviewing physicians with the letter written by the plaintiff explaining his duties as a pastor. Plaintiff appears to conflate the reviews of two separate physicians: Dr. Millstein (who conducted an internet search and discovered the plaintiff's activity as a pastor in the initial peer review) and Dr. Weiss (who considered neither the fact that the plaintiff worked as a pastor nor the plaintiff's explanation of his pastoral duties in the independent peer review). Regardless, the defendant had no reason to supply a nonmedical document in the list of medical documentation it supplied to Dr. Weiss.

and horseback riding in April 2007 (AR 351), and the plaintiff's self-reported

activity in September 2007 includes cleaning the bathroom and carrying groceries

into the house. (AR 405). Furthermore, the objective evidence includes Dr.

Dueland's observation in June 2008 that the plaintiff "gets up out of a seated

position without difficulty" and "is able to climb onto the exam table without

assistance" (AR 263), as well as Dr. Blackburn's conclusion in June 2008 that

"most of [the plaintiff's] symptoms are due to fibromyalgia." (AR 266) This

objective evidence supports the conclusions of Dr. Blackburn in February 2008

(AR 327) and Dr. Dueland in June 2008 (AR 264) that the plaintiff was capable of

sedentary work.

Even considering the note from Dr. Dueland, which was received after the

defendant made its decision, the decision is still not wrong. Dr. Dueland's note,

like Dr. Gober's, is unsupported by additional treatment notes, medical records, or

any other evidence to support his opinion. (AR 198). In fact, Dr. Dueland's note is

the only piece of evidence he ever submitted that supports complete disability.

Every other piece of evidence he submitted–objective medical reports, subjective

opinions, a peer-to-peer consultation with Dr. Weiss–supports at least sedentary

capacity. Even if the reviewing physicians had access to Dr. Dueland's note, the

objective evidence presented in these treatment notes and medical records, along

12

with objective and subjective evidence from the plaintiff's other physicians, supports the conclusion that the plaintiff is capable of sedentary work.

Furthermore, the reviewing physicians had no duty to give any greater weight to the subjective opinions of Dr. Gober and Dr. Dueland than they did to the objective evidence in the records they reviewed. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) ("courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician"). Although they may not arbitrarily disregard subjective evidence, *id.*, plan administrators may determine that a subjective opinion is not supported by the objective evidence presented. Therefore, the defendant had no duty to rely upon the note received from Dr. Dueland after the final decision, and thus the final decision is not wrong.

The three peer reviews conducted by Dr. Millstein, Dr. Kao, and Dr. Weiss all reached the same conclusion: that the plaintiff was capable of sedentary work. All three peer reviews reached this conclusion by considering both objective and subjective evidence, and all were consistent with the subjective opinions rendered by multiple doctors that the plaintiff was capable of sedentary work. The Transferable Skills Analysis, based on the independent peer reviews of Dr. Weiss

and Dr. Kao, was therefore not in error when it identified three sedentary

occupations the plaintiff could perform.

B.    Assuming Liberty's decision to deny benefits was de novo wrong, Liberty
      was vested with discretion in reviewing claims. (Step Two)

      The language in the policy before this court explicitly vests the defendant

with discretion in reviewing claims. The policy provides that "Liberty shall

possess the authority, in its sole discretion, to construe the terms of this policy and

to determine benefit eligibility hereunder." (AR 32). As such, even assuming the

defendant's decision was wrong, the decision is due to be evaluated under Step

Three of the Eleventh Circuit analysis.

C.    Even if Liberty's decision to deny benefits was de novo wrong, it was
      supported by reasonable grounds. (Step Three)

      The policy before the court states in part:

1.          For persons other than pilots, co-pilots, and crewmembers
            of an aircraft:

      i.    if the Covered Person is eligible for the 24 Month Own
            Occupation benefit, "Disability" or "Disabled" means that
            during the Elimination Period and the next 24 months of
            Disability the Covered Person, as a result of Injury or
            Sickness, is unable to perform the Material and Substantial
            Duties of his Own Occupation; and

      ii.   thereafter, the Covered Person is unable to perform, with
            reasonable continuity, the Material and Substantial Duties
            of Any Occupation.

14

(AR 6). Under the policy, "any occupation" means one that the insured "is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity." (AR 5).

The policy provides for a monthly benefit paid "[w]hen Liberty receives Proof that a Covered Person is Disabled." (AR 14). "Proof" is defined as:

the evidence in support of a claim for benefits and includes, but is not limited to, the following:

1.  a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;

2.  an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending physician; and

3.  the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.

Proof must be submitted in a form or format satisfactory to Liberty.

(AR 8). Additionally, the policy vests the defendant with "the authority, in its sole discretion, to construe the terms of this policy and to determine eligibility hereunder." (AR 32).

Because the policy vests the defendant with the "sole discretion" to determine eligibility, the court can only substitute its judgment for the defendant's if the defendant acted arbitrarily and capriciously in denying the plaintiff's claim.

15

When reviewing a denial of ERISA benefits under the arbitrary and capricious standard, "the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made." *Jett*, 890 F.2d at 1139. The records before the defendant at the time it denied benefits provide a reasonable basis for such a decision.

The plaintiff claims that the defendant's decision was tainted by a conflict of interest. Although a conflict of interest clearly exists because the defendant is both the plan administrator and the insurer, there is no indication that this conflict tainted the defendant's decision. In fact, the defendant acted in accordance with federal regulations when it employed independent physicians to review the records on appeal, and it "went beyond what the regulations require by employing an independent physician to review [the plaintiff's] medical records in its initial determination." *Doyle*, 542 F.3d at 1361. Furthermore, the defendant contacted the plaintiff's physicians to obtain updated records (AR 304), even though its plan required the plaintiff to supply that proof himself. (AR 14). Even though the defendant operated under a conflict of interest, its behavior in evaluating the plaintiff's claim does not demonstrate that this conflict influenced the decision to deny benefits.

16

In fact, the decision to deny benefits is supported by the great weight of the evidence the defendant considered. The medical records and physicians' statements show only two opinions of total disability (Dr. Gober's statement of June 23, 2008, and Dr. Dueland's statement of December 22, 2008), neither of which is supported by any other evidence in the medical records. Moreover, Dr. Gober never provided treatment notes or medical records at any point in the evaluation process, although the defendant explicitly requested them. (AR 306). When considered in light of objective medical records, statements from the plaintiff's treating physicians that he could work at a sedentary level, and the physician consultations the defendant requested of its reviewing physicians, the defendant's reviewing physicians' disagreement with these two isolated statements is reasonable.

Furthermore, Dr. Millstein's initial opinion, which comports with the opinions of Dr. Kao and Dr. Weiss in finding the plaintiff capable of sedentary work, is objectively reasonable. In evaluating the available records, Dr. Millstein considered a restrictions form submitted by Dr. Dueland that indicated that the plaintiff could work at a heavy level. (AR 302). Dr. Millstein concluded that there was no support for this contention, when considered in light of the available records. (AR 292). His similar dismissal of Dr. Gober's restrictions (AR 292),

which were also unsupported by the medical record, is likewise reasonable, as is the final conclusion that the plaintiff is capable of sedentary work.

Dr. Kao and Dr. Weiss' evaluations lean on objective evidence similar to that used by Dr. Millstein, in addition to physician consultation, and are likewise reasonable. In conducting his peer review from an orthopedic standpoint, Dr. Weiss considered the information before Dr. Weiss in the initial peer review, as well as additional records and statements submitted by the plaintiff. (AR 245-246). This included the objective evidence submitted by Dr. Dueland in June 2008 that the plaintiff "gets up out of a seated position without difficulty" and "is able to climb onto the exam table without assistance." (AR 263). This is the last piece of objective evidence submitted by Dr. Dueland and supports the later peer-to-peer consultation between Dr. Dueland and Dr. Weiss in which Dr. Dueland agreed that the plaintiff would be capable of sedentary work. (AR 248).

Dr. Kao's independent peer review is similarly supported by the evidence submitted by the plaintiff's treating physicians. In her peer review, Dr. Kao considered objective evidence in the form of the available medical records (including normal PET scan reports from March 2006 and October 2007) and determined that the medical record did not support impairment due to coronary artery disease. (AR 240). Dr. Kao further reviewed the available medical records

for evidence of impairment due to fibromyalgia, the plaintiff's other primary

diagnosis. A peer-to-peer consultation with Dr. Blackburn, in which he opined no

specific impairment associated with fibromyalgia and stated that his treatment of

the plaintiff had been successful, supported Dr. Kao's conclusion that the

available medical evidence did not support impairments associated with

fibromyalgia. (AR 239-240)

In making the decision to deny the plaintiff's disability benefits, the

defendant also performed two Transferable Skills Analyses, each based on the

most recent restrictions form submitted. (AR 310-312; 230-232). The first

Transferable Skills Analysis was based on the restrictions form submitted by Dr.

Dueland that indicated heavy capacity. (AR 310). Because the defendant's

reviewing physician disagreed with this assessment, reliance on this analysis

would be inappropriate, and the defendant did not rely on it in making the decision

to deny benefits. Rather, the defendant relied on the second analysis, which was

based on the peer reviews of Dr. Weiss and Dr. Kao. (AR 230). This second

analysis rejected occupations identified by the earlier analysis because they did not

comport with the restrictions outlined by Dr. Weiss, but it did identify three

occupations–dispatch supervisor, dispatcher, and admitting clerk–all of which the

plaintiff could perform at a sedentary level, and all of which were suited to his

education, experience, and training. (AR 232). In fact, the analysis identified but rejected other positions in medical administration not because of the plaintiff's physical capacity but rather because of his education. (AR 232). This analysis was based on physician reviews which were in turn based on objective evidence and physician consultation, so it was also reasonable.

The plaintiff also raises the issue of the defendant's failure to consider a favorable award of Social Security disability benefits in its decision to deny disability benefits to the plaintiff. While the defendant did require the plaintiff to apply for Social Security disability benefits (AR 119), a favorable decision by the Social Security Administration is not dispositive of whether the plaintiff qualifies for disability benefits under an ERISA plan. *See Paramore v. Delta Air Lines, Inc.*, 129 F.3d 1446, 1452 n. 5 (11th Cir. 1997).

In its denial letter, the defendant outlined the independent physician reviews and the Transferable Skills Analysis, as well as notes from the medical record, including the plaintiff's activity in working with fence posts. (AR 203). The denial letter also noted evidence of the plaintiff's work as a pastor. (AR 204).  Any of these might constitute a reasonable basis for denial of benefits; taken together, they clearly constitute a reasonable basis for the decision to deny benefits.

<u>CONCLUSION</u>

20

Having considered the foregoing, the court is of the opinion defendant Liberty Life Assurance Company of Boston's motion for judgment on the administrative record (doc. 24) is due to be granted, the court finding no genuine issues of material fact remain and the defendant is entitled to judgment in its favor as a matter of law.  The court shall so rule by separate Order.

For the reasons set out herein, the court is of the opinion the plaintiff's motion judgment on the administrative record (doc. 18) is due to be denied, and shall so rule by separate Order.

**DONE** and **ORDERED** this the 24th day of February, 2010.


INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

21